**WIGGLESWORTH, Appellant and Cross–Appellee,**

v.

**ST. JOSEPH RIVERSIDE HOSPITAL et al., Appellee and Cross–Appellant.**

[Cite as *Wigglesworth v. St. Joseph Riverside Hosp.* (2001), 143 Ohio App.3d 143.]

Court of Appeals of Ohio,
Eleventh District, Trumbull County.

No. 99–T–0064.

Decided April 30, 2001.

*Robert S. Passov* and *Gregory R. Kauffman,* for appellant/cross–appellee.

*Charles L. Richards,* for appellee/cross–appellant.

NADER, Judge.

Appellant, Thomas R. Wigglesworth III, appeals from the verdict issued by the Trumbull County Court of Common Pleas in favor of appellant and against appellee, St. Joseph Riverside Hospital ("St. Joseph's"), solely on the issue of damages.

On June 7, 1992, appellant sustained fractures of his left tibia and fibula during a motorcycle race and was taken by ambulance to St. Joseph's. He was treated in the emergency room by Dr. Sterle, who subsequently performed surgery to place a metal plate in appellant's leg.

On June 25, 1992, appellant returned to St. Joseph's for additional surgery and learned that a serious infection had developed in his leg. As a consequence of the infection caused by Dr. Sterle's negligence and the resulting nonunion of his tibia and fibula, appellant was required to endure additional surgeries and procedures.

On September 5, 1995, appellant filed a complaint against appellee alleging that Oscar Sterle, M.D. ("Dr. Sterle") negligently treated compound fractures of appellant's leg at St. Joseph's. Dr. Sterle reached a settlement agreement with appellant and was dismissed from the suit on February 22, 1999, the first day of trial. The trial proceeded against the appellee on the issue of agency by estoppel. Dr. Sterle admitted that his negligence in the care and treatment of appellant's fractured leg was the proximate cause of appellant's injuries. St. Joseph's did not contest Dr. Sterle's admission of negligence.

Medical opinions were presented to the jury in the form of depositions and testimony. Clifford H. Turen ("Dr. Turen"), an orthopedic surgeon in Baltimore, Maryland, testified that it was unacceptable to treat an open comminuted fracture of the tibia such as appellant's with a plate because of the unacceptably high rate of infection associated with that procedure. Dr. Turen testified that Dr. Sterle's medical treatment caused appellant to develop osteomyelitis, an infection in the bone, which contributed to the nonunion. Dr. Turen also testified that if appellant's fracture had been properly treated, his injury would have healed within thirty weeks.

Thomas E. Anderson, M.D. ("Dr. Anderson"), a doctor with the Cleveland Clinic, stated in his deposition that treating a fracture such as appellant's by using a metal plate would increase the risk of infection due to the increased disruption of the soft tissue during the placement of the plate.

John E. Herzenberg, M.D. ("Dr. Herzenberg"), an orthopedic surgeon at Kernan Hospital in Baltimore, Maryland, stated in his deposition that the nonunion in appellant's bone was due to a combination of a severe fracture and osteomyelitis; with the primary cause of the nonunion being the osteomyelitis.

The record reflects that appellant incurred the following medical expenses:

| | | |
|---|---|---|
| Exhibit 9(a): | $ 34,309.13. | Medical services at the University of Maryland. |
| Exhibit 9(b): | $ 1,137.69. | Prescription drugs. |
| Exhibit 9(c): | $ 9,382.00. | Medical services at Kernan Hospital in Baltimore. |
| Exhibit 9(d): | $ 3,984.00. | Medical services and supplies at various locations in the Cleveland area. |
| Exhibit 9(c): | $ 15,742.29. | Medical services at St. Joseph's Riverside Hospital, including services rendered by Dr. Sterle. |

Exhibit 9(F):   $ 73,995.58.   Medical services at the Cleveland Clinic Foundation.
Total:          $138,550.69.   Medical services and supplies.

In addition to the cost of these past medical services and supplies, Dr. Turen projected that appellant will have future medical costs at between $80,000 and $100,000. Appellant suffered, and continues to suffer, physical disfigurement and disability, chronic pain and suffering, and emotional distress. St. Joseph's did not contest appellant's damages.

On March 5, 1999, the jury returned a verdict for appellant in the amount of $16,000; however, the court found that appellee was due a setoff of a minimum of $300,000 per the settlement agreement and consequently rendered a judgment in the amount of zero dollars. Costs of the case, including jury fees, were taxed against the appellee.

On March 9, 1999, appellee filed motions for judgment notwithstanding the verdict and to tax costs against appellant, which were subsequently denied.

Appellant now assigns the following errors:

"[1.] The jury's award of damages was grossly inadequate and against the manifest weight of the evidence.

"[2.] The grossly inadequate damage award was the product of passion and prejudice ignited by the misconduct of defense counsel in closing argument.

"[3.] The jury's award of damages was contrary to law."

On September 21, 2000, appellee filed a cross-appeal assigning the following errors:

"[1.] The trial court erred in overruling Defendant/Appellee's Motion for Judgment Notwithstanding the Verdict.

"[2.] The trial court erred in overruling Defendant/Appellee's Motion to Tax Costs to Plaintiff."

Appellant's first and third assignments of error challenge the adequacy of the verdict. In his first assignment of error, appellant argues that the jury verdict of $16,000 is not sustainable by the weight of the evidence, including bills for past medical services, supplies, and prescriptions, and therefore is contrary to law.

Compensatory damages are intended to make the plaintiff whole. *Pryor v. Webber* (1970), 23 Ohio St.2d 104, 52 O.O.2d 395, 263 N.E.2d 235, paragraph one of the syllabus. "For example, compensatory damages may, among other allowable elements, encompass direct pecuniary loss, such as hospital and other medical expenses immediately resulting from the injury, or loss of time or money from the injury, loss due to the permanency of the injuries, disabilities or disfigurement, and physical and mental pain and suffering." *Fan-*

*tozzi v. Sandusky Cement Prod. Co.* (1992), 64 Ohio St.3d 601, 612, 597 N.E.2d 474, 482.

■ In order to set aside a jury award as inadequate and against the manifest weight of the evidence, a reviewing court must determine that the jury verdict "is so disproportionate as to shock reasonable sensibilities and indicates that the jury lost its way in assessing compensatory damages." *Bailey v. Allberry* (1993), 88 Ohio App.3d 432, 437, 624 N.E.2d 279, 282. Additionally, a reviewing court may grant a new trial on all or part of the issues when the judgment is contrary to law. Civ.R. 59.

Appellant suffered a serious injury as a result of an accident while racing his motorcycle. However, appellant's injury, if treated properly, would have healed without permanent injury. Dr. Sterle admits that his negligence was the cause of appellant's injuries. The record shows that, as a result of Dr. Sterle's negligence, appellant developed an infection that contributed to the nonunion of the bones in his left leg.

Due to the resulting nonunion, appellant underwent additional surgery at the Cleveland Clinic to remove the plate inserted by Dr. Sterle, to remove the infected bone, and to clean the wound. Doctors removed approximately four inches of infected bone from appellant's tibia. The following day, January 19, 1993, a bone graft procedure was performed, and an external fixator was applied to appellant's leg. Subsequently, appellant underwent two additional surgeries to replace the pins attached to the fixator and, finally, a procedure to remove the fixator.

■ Additionally, appellant and Dr. Herzenberg testified that, seven years after the initial surgery, appellant continues to experience pain, requires medication due to pain, and walks with a limp. The jury's verdict for $16,000, in light of appellant's undisputed bills for medical services, medical supplies, and prescription drugs coupled with his pain and suffering, is so disproportionate as to shock reasonable sensibilities and indicates that the jury lost its way in assessing compensatory damages.

The evidence is undisputed that, as a result of Dr. Sterle's negligence, appellant was hospitalized on several occasions, wore an external fixator for approximately one year, underwent several surgeries, sustained scarring on his legs, and incurred $138,550 in past medical bills. Appellant continues to walk with a limp and suffer pain. Yet for these damages resulting from Dr. Sterle's negligent treatment of appellant, the jury awarded $16,000. This award simply cannot be reconciled with the undisputed evidence in this case.

■ We remind the trial court that Civ.R. 49(B) provides that the court *shall* submit written interrogatories to the jury along with the general verdict form,

upon the request of any party prior to the commencement of argument. Prior to closing arguments, appellant's counsel urged the judge to submit to the jury the interrogatories that had been previously submitted to the court. "The purpose of an interrogatory is to 'test the jury's thinking in resolving the ultimate issue so as to not conflict with its verdict.'" *Freeman v. Norfolk & W. Ry. Co.* (1994), 69 Ohio St.3d 611, 613, 635 N.E.2d 310, 313, quoting *Riley v. Cincinnati* (1976), 46 Ohio St.2d 287, 298, 75 O.O.2d 331, 338, 348 N.E.2d 135, 142. Interrogatories would have allowed a reviewing court to ascertain where the jury lost its way in this case.

Having determined that the damages awarded by the jury are against the manifest weight of the evidence, thereby requiring a new trial as to that issue, we need not discuss whether the amount of damages was contrary to law. Appellant's first and third assignments of error have merit.

■ In his second assignment of error, appellant argues that the low amount of the jury verdict was the product of passion and prejudice ignited by the misconduct of defense counsel in closing argument. During closing argument, defense counsel said, "I want you to think about something when you go in that jury room. I want you to think about the effect of a verdict in. these facts and circumstances, what it would mean. Well, it would mean that every time somebody goes in the emergency room from now on it's gonna cost about ten grand."

■■ While defense counsel's statement was clearly misconduct, plaintiff's immediate objection to this statement was sustained, and the jury was instructed to "[d]isregard that statement." The trial court is granted discretion in determining whether counsel's statements during closing argument exceed the bounds of permissible argument. *Pang v. Minch* (1990), 53 Ohio St.3d 186, 559 N.E.2d 1313, paragraph two of the syllabus. "Whether the alleged misconduct is sufficient to taint the verdict with passion or prejudice is for the trial court's determination." *Jones v. Olcese* (1991), 75 Ohio App.3d 34, 40, 598 N.E.2d 853, 857. Appellant's second assignment of error is without merit.

Upon review of the transcript in this case, we find it appropriate to remind counsel for both appellant and appellee that attorneys shall treat each other with the respect that the profession deserves.

■ In its first assignment of error on cross-appeal, appellee argues that the trial court erred in overruling appellee's motion for judgment notwithstanding the verdict. Appellee argues that the 'Agreement to Release and Covenant Not to Sue' ("Covenant") entered into between Dr. Sterle and appellant and its accompanying release of Dr. Sterle released appellee from all liability to appellant.

■ "The trial court must examine the evidence presented and determine if reasonable minds could come to but one conclusion. If the evidence is such, however, that a set of circumstances has been developed establishing a question of fact, and when reasonable minds could reach different conclusions from those circumstances, a directed verdict or judgment n.o.v. is improper." *Hedge v. Hahn* (Oct. 25, 1991), Portage App. No. 90–P–2277, unreported, 1991 WL 216979.

Review of the covenant reveals that, while Dr. Sterle was released from liability, appellant expressly reserved the right to pursue his remaining claims in case No. 95–CV–1397, including claims against appellee. The covenant was a covenant not to sue, not a release of all the parties involved in this claim.

■ "A covenant not to sue is nothing more than a contract and should be construed as such." *Leon v. Parma Community Gen. Hosp.* (2000), 140 Ohio App.3d 95, 746 N.E.2d 689. We agree with the Eighth District's synopsis of when a covenant not to sue will be upheld. In *Leon,* the court held that a covenant not to sue will be upheld if it clearly provides that "(1) the consideration paid was only a partial compensation for the injury sustained; (2) the plaintiff was not 'releasing' the other party from any claim, but promised only to 'cease and desist' from further prosecution of the present action; and (3) the plaintiff is reserving its rights to pursue other claims."

The covenant expressly states that (1) the $300,000 payment to appellant by OIGA was only partial payment for the injuries sustained by appellant; appellant retained the right to sue additional parties; (2) appellant was not releasing all the parties, but promised to cease and desist from prosecuting any claims against "Dr. Oscar Sterle, Howland Orthopedic Care, Inc., IGA, and/or The PIE Mutual Insurance Company"; and (3) appellant reserved the right to pursue claims against the remaining defendants.

The covenant does not preclude appellant from suing St. Joseph's. Appellee's first assignment of error is without merit.

■ In its second assignment of error, appellee argues that the trial court erred in overruling its motion to tax costs to plaintiff. Civ.R. 54(D) provides that costs shall be awarded to the prevailing party.

■ A prevailing party is the party "who successfully prosecutes the action or successfully defends against it, *prevailing on the main issue, even though not necessarily to the extent of his original contention. The one in whose favor the decision or verdict is rendered and judgment entered.*" *Woyma v. Johnson* (Nov. 16, 1994), Lake App. No. 94–L–004, unreported, 1994 WL 638493.

In the case *sub judice,* a verdict was awarded in favor of appellant. Despite the fact that the verdict was actually for zero dollars, appellant successfully

maintained his claim and prevailed on the main issue; appellee was liable under the theory of agency by estoppel. Thus, appellant is the prevailing party. Appellee's second assignment of error is without merit.

For the foregoing reasons, the judgment of the Portage County Court of Common Pleas is reversed and remanded as to the appellant's first and third assignments of error on the issue of damages only, affirmed as to appellant's second assignment of error, and affirmed as to appellee's cross-appeal.

*Judgment affirmed in part*
*and reversed in part.*

WILLIAM M. O'NEILL, P.J., and CACIOPPO, J., concur.

MARY CACIOPPO, J., retired, of the Ninth Appellate District, sitting by assignment.