OPINION
{¶ 1} Appellant, Doris Guarino ("Guarino"), appeals the judgments entered by the Lake County Court of Common Pleas. The trial court entered summary judgment in favor of one of the appellees, the city of Willoughby Hills ("the city"). A jury trial was held, wherein the jury returned a verdict in favor of the remaining appellees, Michael and Mary Farinacci ("the Farinaccis").
 {¶ 2} Guarino has lived on the south side of White Road in Willoughby Hills for forty-eight years. The back portion of her property has always been wet and was classified as a wetland at trial. The natural drainage of Guarino's property is from west to east.
 {¶ 3} The Farinaccis also live on the south side of White Road, in a residence that is to the east of Guarino. The Farinaccis purchased this residence in 1987. Mr. Farinacci testified that the back portion of their property was wet and often had standing water. Soon after purchasing the residence, the Farinaccis filled the back portion of their property and erected a pole barn. They obtained a permit from the city's building inspector to construct the barn. In addition to the barn, the Farinaccis brought in fill to raise the grade of their property around the barn and create a driveway to access the barn. They did not obtain any permits for this additional fill.
 {¶ 4} The fill used to build the barn coupled with the additional fill around the barn created a barrier. This barrier reduced the natural drainage of water from Guarino's property to the Farinaccis' property. In 1990, Guarino noticed significantly more water on her property. This problem persisted throughout the 1990s. As a result of the excess water, several trees on Guarino's property died.
 {¶ 5} There was also an excess accumulation of water on Rockefeller Road. As a result of the water on the roadway, the city filed suit against the Farinaccis, and other property owners, also east of Guarino, who raised the grade on their properties, alleging that their fill caused a public nuisance. This lawsuit was settled between the city and the Farinaccis through a consent judgment entry ("consent decree"). The consent decree required the Farinaccis to cause and permit drainage across their property. The Farinaccis were not required to correct the drainage problem until other property owners to the east of them corrected the drainage problems on their properties. After the other property owners improved the drainage across their properties, the Farinacci's installed a swale on their property. Collectively, these improvements alleviated the flooding problems on Rockefeller Road.
 {¶ 6} Following the lawsuit between the city and the Farinaccis, Guarino filed the instant lawsuit against the city and the Farinaccis. The instant action sought damages on the grounds of negligence, nuisance, and trespass. The complaint also sought recovery under R.C.901.51, which prohibits the destruction of trees, vines, shrubs, bushes, saplings, or crops. Finally, in her amended complaint, Guarino requested damages from the city on the grounds of an unconstitutional taking of her property.
 {¶ 7} The city filed a motion for summary judgment. The trial court granted this motion. The motion did not contain Civ.R. 54(B) language indicating that there was no just reason for delay. Thus, Guarino has timely appealed this judgment.[1]
 {¶ 8} A jury trial was held with the remaining parties. The jury entered a general verdict in favor of the Farinaccis on all counts. Following the jury verdict, Guarino filed a motion for a judgment notwithstanding the verdict or, in the alternative, for a new trial. One of the grounds cited in the motion was the allegation that one of the jurors, Karen Cipriano, worked for the same company as the Farinaccis' daughter. The trial court denied Guarino's motion. Thereafter, the trial court journalized the jury's verdict by entering judgment in favor of the Farinaccis.
 {¶ 9} Guarino has timely appealed both the final judgment in favor of the Farinaccis and the summary judgment in favor of the city. Guarino raises four assignments of error. Guarino's first assignment of error is:
 {¶ 10} "The trial court erred in granting city of Willoughby Hills' motion for summary judgment."
 {¶ 11} Pursuant to Civ.R. 56(C), summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[2] The standard of review for the granting of a motion for summary judgment is de novo.[3]
 {¶ 12} One of Guarino's causes of action against the city was trespass. "Trespass is the unlawful entry upon the property of another."[4] The elements of trespass are "(1) an unauthorized intentional act, and (2) entry upon land in the possession of another."[5] The trial court found that there were no genuine issues of material fact regarding Guarino's trespass claim. We agree. The city did not place the water on Guarino's property. Nor did the city have control over the portions of the Farinaccis' property that caused flooding.
 {¶ 13} Guarino asserted an additional cause of action against the city, nuisance. There are two categories of nuisance, public and private. A public nuisance is an interference with a right associated with the general public.[6] A private nuisance involves the interference with the use and enjoyment of an individual's land.[7]
 {¶ 14} The suit between the city and the Farinaccis alleged a public nuisance, as the city sought to abate the accumulation of excess water on Rockefeller Road. Guarino does not use the terms "public nuisance" or "private nuisance" in her complaint or amended complaint. However, it is apparent that the instant action was asserting a private nuisance, as Guarino was alleging that the defendants were interfering with her use and enjoyment of her land, and she was not alleging that the defendants interfered with a public right, such as traveling on a public roadway.
 {¶ 15} There are two varieties of private nuisance, an absolute nuisance and a qualified nuisance. The Supreme Court of Ohio has held:
 {¶ 16} "An absolute nuisance is based on either intentional conduct or an abnormally dangerous condition that cannot be maintained without injury to property, no matter what care is taken. A qualified nuisance is essentially a tort of negligent maintenance of a condition that creates an unreasonable risk of harm, ultimately resulting in injury."[8]
 {¶ 17} The trial court found that regrading of property that minimally affects the natural drainage of water is not so inherently dangerous that the strict liability provision of an absolute nuisance should apply. We agree.
 {¶ 18} As noted above, a qualified nuisance is based on negligence. Therefore, we will analyze this claim with Guarino's negligence claim, below.
 {¶ 19} Guarino's next cause of action was negligence. There are four requisite elements for a successful negligence action, which include: (1) a duty owed to the plaintiff by the defendant; (2) a breach of that duty by the defendant; (3) damages suffered by the plaintiff; and (4) the defendant's breach is the proximate cause of the plaintiff's damages.[9] The initial concern in both the negligence action and the qualified nuisance action is whether the city owed a duty to Guarino. In her brief in opposition to the city's motion for summary judgment, Guarino repeatedly asserted that the city owed her a duty as a result of entering into the consent decree with the Farinaccis. Guarino relied on the language indicating that the city had the right to enter the Farinaccis' property to perform the necessary work if the Farinaccis failed cause drainage to occur. However, the trial court found that the consent decree did not place a duty on the city on behalf of Guarino. We agree. The city had the option to perform the drainage work to the Farinaccis' property if the Farinaccis did not complete it. Contrary to Guarino's assertions, the city was not required to perform the work if the Farinaccis refused to complete it.
 {¶ 20} Again, Guarino was not alleging an interference of a right associated with the general public, therefore, she was not entitled to recovery under a public nuisance theory. In addition, the city did not owe a duty to Guarino. Nor did the city cause the water, by act or omission, to enter Guarino's property. Thus, Guarino did not assert a successful claim of private nuisance against the city. Accordingly, summary judgment in favor of the city was appropriate on these issues.
 {¶ 21} Guarino's next claim against the city was for an unconstitutional taking. The Fifth and Fourteen Amendments to the United States Constitution, as well as Article I of the Ohio Constitution, prohibit the government from taking an individual's property without just compensation.[10] The trial court found that there were no genuine issues of material fact to be determined and the city was not liable to Guarino for a taking. We agree. As previously discussed, the city did not cause the flooding and had no duty to enter onto the Farinaccis' property to correct any drainage problems. Moreover, the trial court found that the city did not authorize the regrading of the Farinaccis property.
 {¶ 22} The last claim in the complaint alleged the city violated R.C. 901.51, which states:
 {¶ 23} "No person, without privilege to do so, shall recklessly cut down, destroy, girdle, or otherwise injure a vine, bush, shrub, sapling, tree, or crop standing or growing on the land of another or upon public land.
 {¶ 24} "In addition to the penalty provided in section 901.99 of the Revised Code, whoever violates this section is liable in treble damages for the injury caused."
 {¶ 25} The trial court found that summary judgment was appropriate for "the reasons discussed previously." The trial court had previously found that the city did not have control of the water or cause it to enter onto the Guarino's property. Therefore, Guarino could not show that the city recklessly injured the trees on her property, as required by R.C. 901.51.
 {¶ 26} The trial court correctly found that there were no genuine issues of material fact to be decided to any of the claims against the city. Therefore, the trial court did not err by granting the city's motion for summary judgment.
 {¶ 27} Guarino's first assignment of error is without merit.
 {¶ 28} Guarino's second assignment of error is:
 {¶ 29} "The trial court's decision was against the manifest weight of the evidence where the parties' experts attributed liability for plaintiff/appellant Doris Guarino's damages to the defendants/appellees Mary and Michael Farinacci's unreasonable actions."
 {¶ 30} "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."[11]
 {¶ 31} Following her case-in-chief, Guarino agreed that a general verdict form would be used. In addition, Guarino did not request that written interrogatories be submitted to the jury, an option available pursuant to Civ.R. 49(B). The purpose of interrogatories is to test the reasoning used by the jury in reaching its decision, so that the reasoning does not conflict with the verdict.[12] In the case sub judice, there were several different reasons the jury could have found for the Farinaccis. Without interrogatories, there is nothing before this court to indicate why the jury found for the Farinaccis.
 {¶ 32} The jury could have found that Guarino's claim was barred by the statute of limitations. The Farinaccis constructed the barn in 1987. Guarino first noticed excess water on her property in 1990. The lawsuit was filed in August 1999. Accordingly, the jury was instructed that it could not award any damages to Guarino for harm that the Farinaccis may have caused prior to August 25, 1995. Guarino did not object to this instruction. Since the jury was not required to provide reasons in support of their verdict, we do not know if the jury found that the Farinaccis caused damage to Guarino's property prior to August 1995, but that the an award of damages was barred by the statute of limitations. There was competent, credible evidence to support this conclusion.
 {¶ 33} Moreover, as discussed below, the jury's verdict in favor of the Farinaccis was supported by competent, credible evidence on the merits of the case.
 {¶ 34} Guarino brought this action on the common law grounds of negligence, trespass, and nuisance. These definitions are set forth in our analysis of Guarino's first assignment of error. In addition, the jury was instructed on each of these definitions.
 {¶ 35} All of the above actions allege that Guarino is entitled to damages as a result of the Farinaccis causing water to back up onto her property. The Supreme Court of Ohio set forth a standard for resolving surface water disputes in McGlashen v. Spade Rockledge Corp.[13] Both parties agreed that this was the appropriate standard for this action, and the trial court instructed the jury using this standard. In their respective appellate briefs, both parties continue to recognize this standard as the controlling law. The standard is:
 {¶ 36} "In resolving surface water disputes, courts of this state will apply a reasonable-use rule under which a possessor of land is not unqualifiedly privileged to deal with surface water as he pleases, nor absolutely prohibited from interfering with the natural flow of surface waters to the detriment of others. Each possessor is legally privileged to make a reasonable use of his land, even though the flow of surface waters is altered thereby and cause some harm to others, and the possessor incurs liability only when his harmful interference with the flow of surface water is unreasonable."[14]
 {¶ 37} There was evidence presented that the Farinaccis improved the value and utility of their property by erecting the pole barn. Considering the experts' opinions valued Guarino's property at $234,000 and $238,000 (using a sales approach) and $240,000 and $250,000 (using a cost approach), the harm done to Guarino's property was relatively minimal, as expert testimony indicated that the value of her property diminished by $6,000 or $15,000. Accordingly, there was competent, credible evidence presented to support a finding that the Farinaccis' interference with the flow of the water was reasonable.
 {¶ 38} In regard to the duty of a property owner to provide proper drainage, the Supreme Court of Ohio has held, "the foreseeability of the mudslides and flooding, as well as the gravity of the harm, should be weighed against the utility of * * * development and the practicality of providing for adequate drainage prior to clearing and grading."[15]
There was evidence presented that it was impractical for the Farinaccis to install adequate drainage until the property owners to the east of them also provided drainage. Walter Pacejus, who testified as an expert for Guarino, stated the Farinaccis have put in a swale that has alleviated approximately sixty percent of the drainage problem.
 {¶ 39} There was competent, credible evidence presented to support a jury's finding that the Farinaccis use of their property was reasonable. In addition, there was evidence presented that the Farinaccis provided adequate drainage. Finally, there was evidence presented that the utility of the Farinaccis' improvements were not outweighed by the minimal harm inflicted on Guarino's property. Accordingly, we cannot say that the jury's verdict was against the manifest weight of the evidence as it relates to the common law claims of negligence, trespass, and nuisance.
 {¶ 40} Guarino also alleged that the Farinaccis violated R.C.901.51. As noted above, this section requires that the Farinaccisrecklessly destroyed or damaged Guarino's trees. "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature."[16] There was evidence presented that the Farinaccis were not even aware that Guarino's property was flooded. Moreover, we cannot say that erecting a barn on one's property was disregarding a known risk that Guarino's property would flood, resulting in the death of her trees.
 {¶ 41} As there was competent, credible evidence presented showing that the Farinaccis did not act recklessly, the jury's verdict was not against the manifest weight of the evidence in regard to the R.C. 901.51
claim.
 {¶ 42} Guarino's second assignment of error is without merit.
 {¶ 43} Guarino's third assignment of error is:
 {¶ 44} "The trial court erroneously took judicial notice of the consent judgment entry and refused to allow plaintiff's counsel an opportunity to question witnesses regarding that document."
 {¶ 45} The admission of evidence is left to the sound discretion of the trial court.[17] A trial court's decision regarding the admission of evidence may not be overturned by a reviewing court absent an abuse of that discretion.[18] "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."[19]
 {¶ 46} Initially, Guarino asserts that it was inappropriate for the trial court to take judicial notice of the consent decree. The trial court took judicial notice of the consent decree and admitted it as a court's exhibit. Evid.R. 201 provides for courts to take judicial notice, and states, in part:
 {¶ 47} "(A) Scope of the rule. This rule governs only judicial notice of adjudicative facts; i.e., the facts of the case.
 {¶ 48} "(B) Kinds of facts. A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot [reasonably] be questioned."
 {¶ 49} A consent decree is both a contract and a final judgment of the case. A trial court is not permitted to take judicial notice of prior proceedings from a separate action.[20] However, Guarino did not object to the trial court's decision to take judicial notice. In fact, the trial court took judicial notice due to the consistent requests of Guarino's counsel to discuss the consent decree. Since there was no objection, Guarino has waived the right to challenge the trial court's actions regarding judicial notice on appeal.[21]
 {¶ 50} Guarino also claims the trial court erred by not permitting her to question witnesses about the consent decree. In her brief, Guarino asserts that it had been her contention throughout the lawsuit that the city had a duty to correct the flooding on her property. However, at the time the trial court took judicial notice of the consent decree, and prohibited Guarino from questioning witnesses regarding the document, the city had already been dismissed from the lawsuit, via the trial court's judgment entry granting the city's motion for summary judgment. Since the city was no longer a party, the trial court was attempting to focus the trial on the issue regarding the remaining parties, i.e., the Farinaccis.
 {¶ 51} Guarino argues that the intention of the parties to the consent decree was relevant and, as such, she should have been permitted to question witnesses about the document. As the city was no longer a party, the only relevance of the intentions of the parties would have been in support of a third party beneficiary claim against the Farinaccis. However, a claim for breach of contract was not included in the complaint.
 {¶ 52} Finally, Guarino has not shown how she was prejudiced by the trial court's actions, since some questions were asked about the consent decree. Her attorney questioned the city engineer, Richard Iafelice, regarding the intention of the parties. He testified that the intent of the city was to abate the public nuisance of water collecting on Rockefeller Road. Moreover, he testified that the Farinaccis complied with the city's requests.
 {¶ 53} The trial court did not abuse its discretion by prohibiting Guarino from questioning witnesses regarding the consent decree.
 {¶ 54} Guarino's third assignment of error is without merit.
 {¶ 55} Guarino's fourth assignment of error is:
 {¶ 56} "The trial court erred in not granting a new trial since juror misconduct occurred when juror number 8, Karen Cipriano, failed to disclose during voir dire that she knew Vera Farinacci, the daughter of defendants/appellees Mary and Michael Farinacci."
 {¶ 57} Guarino claims she was prejudiced by the presumption of bias that arose due to one of the jurors allegedly knowing the Farinaccis' daughter. Guarino asserts Juror Karen Cipriano knew the Farinaccis' daughter and did not disclose this relationship during the voir dire of the jury.
 {¶ 58} Guarino has not filed a transcript of the jury voir dire. Guarino had a duty, pursuant to App.R. 9(B), to file all relevant portions of the transcript. This court has held, "[i]f appellant cannot demonstrate the claimed error then we presume the regularity of the trial court proceedings and affirm the judgment."[22] Guarino cannot demonstrate this claimed error. Thus, Guarino's fourth assignment of error is without merit.
 {¶ 59} The judgment of the trial court is affirmed.
Judgment affirmed.
DONALD R. FORD, P.J., and ROBERT A. NADER, J., concur.
ROBERT A. NADER, J., retired, of the Eleventh Appellate District sitting by assignment.
[1] See App.R. 4(B)(5).
[2] Dresher v. Burt (1996), 75 Ohio St.3d 280, 293.
[3] Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105.
[4] (Citation omitted.) Chance v. BP Chemicals, Inc. (1996),77 Ohio St.3d 17, 24.
[5] Brown v. Scioto Cty. Bd. of Commrs. (1993), 87 Ohio App.3d 704,716, citing Blashinsky v. Topazio (Apr. 17, 1987), 11th Dist. No. 11-113, 1987 WL 9942.
[6] Cincinnati v. Beretta U.S.A. Corp., 95 Ohio St.3d 416,2002-Ohio-2480, at ¶ 8.
[7] Id.
[8] State ex rel. R.T.G., Inc. v. State, 98 Ohio St.3d 1,2002-Ohio-6716, at ¶ 59.
[9] Hester v. Dwivedi (2000), 89 Ohio St.3d 575, 578.
[10] See, e.g., Lucas v. South Carolina Coastal Council (1992),505 U.S. 1003.
[11] C. E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus.
[12] (Citations omitted.) Wigglesworth v. St. Joseph Riverside Hosp.
(2001), 143 Ohio App.3d 143, 149.
[13] McGlashan v. Spade Rockledge Corp. (1980), 62 Ohio St.2d 55.
[14] Id. at syllabus.
[15] Id. at 61, citing 4 Restatement on Torts 2d 108-142, Sections 822-831.
[16] R.C. 2901.22(C).
[17] See, e.g., State v. Kinley (1995), 72 Ohio St.3d 491, 497.
[18] (Citations omitted.) Peters v. Ohio State Lottery Comm. (1992),63 Ohio St.3d 296, 299.
[19] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
[20] The Deli Table, Inc. v. Great Lakes Mall (Dec. 31, 1996), 11th Dist. No. 95-L-012, 1996 Ohio App. LEXIS 5930, at *31-32, citing Statev. Raymundo (Aug. 18, 1995), 11th Dist. No. 94-T-5025, 1994 Ohio App. LEXIS 3395; Phillips v. Rayburn (1996), 113 Ohio App.3d 374.
[21] Id. citing Stores Realty Co. v. Cleveland (1975), 41 Ohio St.2d 41,43.
[22] State v. Davis (Dec. 4, 1998), 11th Dist. No. 97-P-0111, 1998 Ohio App. LEXIS 5810, at *2, citing Rose Chevrolet, Inc. v. Adams (1988),36 Ohio St.3d 17, 19; Knapp v. Edwards Laboratories (1980),61 Ohio St.2d 197; Bucary v. Rothrock (July 13, 1990), 11th Dist. No. 89-L-14-046, 1990 Ohio App. LEXIS 2854, at *2-3.