OPINION
{¶ 1} Appellants, Carol Celmer ("Carol") and Michael Celmer ("Michael"), appeal from the setoff judgment of the Trumbull County Court of Common Pleas, and judgment upon jury verdict entered in this medical malpractice case against appellees, Dr. Edward Walker ("Dr. Walker"), Dr. Han Soo Shin ("Dr. Shin"), and Radiology Associates of Warren, Inc. ("Radiology Associates").
 {¶ 2} On April 28, 2000, appellants filed a civil action against Dr. Robert Rodgers, Dr. James Goettsch, Dr. Sharon George, and appellees. Appellants subsequently settled their claims against Dr. George, Dr. Rodgers, and Dr. Goettsch for an aggregate amount of $325,000. The case proceeded to trial as to the remaining defendants, hereunder the appellees.
 {¶ 3} Prior to trial, the parties allegedly agreed, although not supported by the record, that in the event of a jury verdict in favor of appellants, appellees were entitled to a monetary setoff in the amount of the $325,000 settlement with the former co-defendants, provided that the jury was instructed to award damages, and found damages in an amount to fully and fairly compensate appellants, regardless of who caused the loss. The case proceeded to jury trial on May 18, 2004.
 {¶ 4} The following facts were revealed at trial. In February of 1996, Carol became a patient of Dr. George, a family practice physician in Warren. Carol's first mammogram while under the care of Dr. George occurred on February 8, 1997. This mammogram was interpreted by Dr. Rodgers and Dr. Goettsch as normal with no evidence of malignancy. On February 6, 1998, Dr. George sent Carol for another mammogram, which was interpreted by Dr. Walker. As a part of his interpretation, appellee, Dr. Walker, testified that he reviewed Carol's previous mammogram and compared both films to determine if there were any changes. Appellee, Dr. Walker, interpreted the films as normal, and he did not recommend or order, any additional studies. A copy of his radiology report was sent to and received by Dr. George. On August 1998, Carol had another appointment with Dr. George. At that time, she informed Dr. George that she had a lump in her right breast. Dr. George diagramed the area of concern in her office chart. Accordingly to Dr. George, and the diagram contained in her medical records, the lump was located in a position of "nine o'clock." After palpating the lump, Dr. George testified that she thought the lump was caused by fibrocystic disease, a benign condition. Dr. George did not order any further work up of the lump at that time.
 {¶ 5} On December 9, 1998, Dr. George ordered a mammogram and breast ultrasound. Appellee, Dr. Walker, interpreted the mammogram as normal with no signs of malignancy. Following the mammogram, Carol underwent an ultrasound of her right breast. The ultrasound was performed by a technician, and the films were interpreted by appellee, Dr. Shin. He interpreted the ultrasound as showing tiny benign cystic lesions at the "nine o'clock position on the right breast." Appellee, Dr. Shin, testified that the cysts were so small, that neither the patient nor a physician would have been able to detect the lesions on a physical examination. Appellee, Dr. Shin, did not recommend any further studies on Carol regarding her palpable lump.
 {¶ 6} The reports from Carol's December mammogram and ultrasound were sent to Dr. George, who testified that, she relied upon the interpretations and that she felt reassured by the "normal" interpretations, especially because of the findings that there were only benign cysts at the "nine o'clock" position on Carol's right breast.
 {¶ 7} One year later, in December 1999, Dr. George ordered an annual mammogram for Carol. This study was interpreted as showing an area suspicious for malignancy in Carol's right breast. Upon receiving the results of this mammogram, Dr. George immediately referred Carol to a surgeon. As a result of Dr. George's referral, Carol underwent a surgical biopsy, which led to a diagnosis of breast cancer. Further surgery indicated that the cancer had spread to her lymph nodes. Despite treatment, the cancer eventually spread to her liver, ribs, and several areas of her bones. Testimony at trial established that she has only a 15 percent chance of survival.
 {¶ 8} On May 24, 2004, the jury returned a verdict against appellees in favor of appellants for the aggregate sum of $200,000. On May 25, 2004 the trial court entered judgment on the verdict. On June 1, 2004, appellees filed a motion to reconsider judgment on the verdict and requested that the trial court enter a judgment reducing the verdict by the amount of the settlement. On that same day, the trial court entered a judgment entry on the setoff to its earlier May 25, 2004 judgment entry, reducing the $200,000 jury award against appellees, in favor of appellants, to zero dollars. Appellants then filed a motion to reconsider awarding setoff and a motion for new trial on damages. Both motions were denied by the court on June 16, 2004. Appellants timely filed the instant appeal and present the following assignments of error for our review:
 {¶ 9} "[1.] The trial court erred to the prejudice of Appellants by denying Appellants' Motion to Reconsider Awarding Set-off.
 {¶ 10} "[2.] The trial court erred to the prejudice of Appellants by refusing to instruct the jury that any award given to Appellants would be reduced by the amounts paid by the settling defendants.
 {¶ 11} "[3] The trial court erred to the prejudice of Appellants by failing to order a new trial on damages when the verdict was contrary to law."
 {¶ 12} In their first assignment of error, appellants argue that the trial court committed error when it ordered the verdict of the judgment entry be reduced by the amount of the settlement funds, thereby eliminating the entire judgment rendered to them pursuant to the jury award and findings.
 {¶ 13} Dr. George, Dr. Goettsch, and Dr. Rodgers, were co-defendants along with appellees, in the original malpractice action filed by appellants on April 28, 2000. Prior to the commencement of the trial, Dr. George, Dr. Goettsch, and Dr. Rodgers entered into a settlement with appellants, for the sum of $325,000, and a notice of voluntary dismissal against them was filed by appellants on January 2, 2004.
 {¶ 14} It is undisputed that appellants and appellees stipulated to a setoff of the $325,000 in settlement funds, in the event of a jury verdict in favor of appellants upon the understanding that the jury would be instructed to award damages that would fully compensate appellants for their loss, regardless of the parties who caused the injuries.
 {¶ 15} During the trial, the jury heard testimony about the negligence of Drs. Rodgers, Goettsch, and George, and that each had entered into a settlement with appellants, (no amount was disclosed).
 {¶ 16} At the close of evidence but prior to closing arguments, the court considered proposed jury instructions. Both appellees and appellants were able to agree upon all but one jury instruction, concerning the pretrial settlement and setoff issues. Appellants submitted the following instruction:
 {¶ 17} "You have heard throughout this case that out-of-court settlements were reached between Carol and Mike Celmer, and between Carol and Mike Celmer and Dr. Sharon George, and between Carol and Mike Celmer and Drs. Rodgers and Goettsch. Under the law of Ohio, the Court instructs you that Plaintiffs are only entitled to one recovery for their damages. If you consider a damage award, you are instructed that you are to consider the damage caused by all responsible parties to include Dr. George, Dr. Rodgers, and Dr. Goettsch. If you do award damages, the Court will then reduce the amount awarded by the amount of the previous settlements." Appellees objected to these instructions.
 {¶ 18} The court decided to instruct the jury as follows: "The subject of the settlement by other Defendants has come up in the trial. Those matters are not for your consideration you are to decide what amounts will fully and fairly compensate Plaintiffs if you find for the Plaintiffs." After closing arguments, upon the request of Appellees, the court submitted two sets of interrogatories to the jury. The first set entitled "Interrogatories [sic] — A," pertained to appellee, Dr. Walker, and the second set entitled "Interrogatories [sic] B," pertained to Dr. Shin. Each set of interrogatories contained specific questions to allocate any damage award found to appellees, Dr. Walker and Dr. Shin, individually. Neither appellees nor appellants objected to the interrogatories.
 {¶ 19} On the second day of its deliberations, the jury submitted two questions to the court. The first question stated: "Since the original case had 5 defendants, three of which have settled out of court, if we award a monetary figure, will only the remaining two defendants be responsible for the amounts listed or will all five share in paying for the figure (asked because Plaintiff talked about all 5 in summation)?"
 {¶ 20} Appellants renewed their request for the court to instruct the jury as to setoff. The court responded to the jury's question as follows:
 {¶ 21} "The court instructs you as a matter of law that if you find for the Plaintiffs, you are to award an amount that will fully and fairly compensate the Plaintiffs regardless of the party who caused it. You are not to speculate as to the effect that any settlement will have on your award."
 {¶ 22} The second jury question submitted to the court during its deliberations, stated as follows: "Will any monetary figure assigned to Dr. Walker or Dr. Chin [sic] be the sole responsibility of only that doctor?"
 {¶ 23} In response, the trial court instructed the jury to "[s]ee answer in previous question."
 {¶ 24} On May 24, 2004, the jury returned a verdict in favor of appellants and awarded damages as follows:
 {¶ 25} "Against Appellees Walker and Radiology Associates of Warren, Inc., in the amount of Sixty Thousand Dollars ($60,000.00) for Appellant Carol Celmer and Twenty-Five Thousand Dollars ($25,000.00) for Appellant Michael Celmer; and against Appellees Shin and Radiology Associates of Warren, Inc., in the amount of Ninety Thousand Dollars ($90,000) for Appellant Carol Celmer and Twenty-Five Thousand Dollars ($25,000.00) for Appellant Michael Celmer." On May 25, 2004, the court entered judgment on the verdict.
 {¶ 26} On June 1, 2004 Appellees filed a motion to reconsider judgment on the verdict, requesting the court to reduce the verdict by the amount of the settlement with Drs. George, Rodgers, and Goettsch. On the same day, the court filed a judgment entry captioned "Judgment Entry on the Set-off" that stated as follows: "The court pursuant to the stipulated $325,000.00 setoff, makes them following calculation in relation to the MAY 25, 2004, Judgment on the Verdict. * * * Carol Celmer recovers from Defendants, * * * Walker and Shin and Radiology Associates of Warren, Inc., the sum of zero dollars ($0). Plaintiff, Michael Celmer, recovers from the Defendants, * * * Walker, Shin and Radiology Associates of Warren, Inc., the sum of zero dollars ($0)."
 {¶ 27} In Fidelholtz v. Peller (1988), 81 Ohio St.3d 197,201, the Supreme Court of Ohio stated that "Defendants settle for many reasons, such as the avoidance of bad publicity and litigation costs, the possibility of an adverse verdict, and the maintenance of favorable commercial relationships." Setoff of settlement funds has been recognized as a means to protect against the danger of a double recovery in cases where settlement agreements have been entered into by co-defendants. Thus, it follows where there is no risk of double recovery, setoff should not be permitted. Howard v. Seidler (1996),116 Ohio App.3d 800, 816. See, also, Allan v. King Tools Manufacturing (Dec. 30, 1999), 7th Dist. No. 98 C.A. 14, 1999 Ohio App. LEXIS 6433.
 {¶ 28} Here, it is undisputed that the parties entered into an agreement that any judgment against appellees would be subject to setoff, in an award of damages for Appellants' total loss, i.e., without regard to the party who caused their loss.
 {¶ 29} Although the trial court gave an instruction for the jury to award "an amount that will fully and fairly compensate [appellants] regardless of the party who caused it," the jury failed to make a determination of total loss. Instead, the jury awarded damages solely as to the negligence of the appellees, Dr. Walker and Dr. Shin. Based upon the evidence submitted to the jury, including the testimony of Dr. George, admitting her own negligence, it is clear that the damages awarded to appellants and later subjected to a setoff, did not include any damages for which the settling doctors may have been responsible as a result of the loss suffered by appellants. Thus, the danger of double recovery was not present in this case. Therefore, we conclude that the court erred when it setoff the sum of $325,000 obtained through settlement, against the jury award.
 {¶ 30} The purpose of an interrogatory is to "`test the jury's thinking in resolving the ultimate issue so as not to conflict with its verdict.'" (Citations omitted.) Wigglesworthv. St. Joseph Riverside Hosp. (2001), 143 Ohio App. 3d 143, 149. Thus, interrogatories assist a reviewing court in its determination of whether a jury has lost its way in a case. Id. Here, the jury award for compensation for damages to appellants was allocated solely between the remaining appellees, despite the jury instruction given by the court. Compensatory damages are intended to make the plaintiff whole. Pryor v. Webber (1970),23 Ohio St. 2d 104, paragraph one of the syllabus; Wiggleworth
at 147. Thus it is evident that the jury clearly lost its way by failing to award full compensation for appellants' loss.
 {¶ 31} We further note that it was the appellees who requested the interrogatories be submitted to the jury members to assign damage amounts based upon the individual liability of Dr. Shin and Dr. Walker. Thus, it was the appellees, who, in effect, eliminated the possibility of applying a setoff in this case.
 {¶ 32} Appellants further assert that the setoff to the judgment was an improper nunc pro tunc order. We note that the court did not apply a setoff of the $325,000 settlement to the jury award in its original judgment entry on the verdict. It was not until later on June 1, 2004, that the court entered its judgment entry on the setoff and no hearing was conducted or notice provided to appellants.
 {¶ 33} Upon a review of the record, we believe that the trial court treated its June 1, 2004 judgment as a nunc pro tunc entry. However, the purpose of a nunc pro tunc entry is to correct a clerical mistake, not to alter substantively a damage award. As this court has previously observed: "the purpose of a nunc pro tunc order is to have the judgment of the court reflect its true action. The power to enter a judgment nunc pro tunc is restricted to placing upon the record evidence of judicial action which has actually been taken * * * It does not extend beyond the power to make the journal entry speak the truth * * * and can be exercised only to supply omissions in the exercise of functions which are merely clerical * * * It is not made to show what the court might or should have decided, or intended to decide, but what it actually did decide." (Citations omitted.) McKay v. McKay
(1985), 24 Ohio App.3d 74, 75; see, also, Criado v. Truesdell,
11th Dist. No. 2002-A-0035, 2003-Ohio-6681, at ¶ 23. As a result, a trial court may use a nunc pro tunc order to reflect its true judgment only if the amendment does not alter the substance of the previous decision. Criado at ¶ 24. With respect to this case, reducing an award of damages from $200,000 to zero dollars, is not simply correcting a clerical mistake; instead, it is a fundamental modification of both the court's earlier judgment entry on the verdict and the verdict of the jury. We conclude that the setoff was erroneously ordered by the trial court in the case sub judice since the jury did not consider the potential liability of the settling defendants.
 {¶ 34} Based upon the foregoing, appellants' first assignment of error is with merit. Thus, appellants' second and third assignments of error are rendered moot. The judgment entry on the setoff and judgment entry on the verdict are reversed and this matter is remanded for a new trial as to damages only.
O'Neill, J., concurs, Grendell, J., concurs in judgment only.