[Cite as *Bluemile, Inc. v. Atlas Indus. Contrs., Ltd.*, 2017-Ohio-9196.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Bluemile, Inc., | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 16AP-789 |
| | | (C.P.C. No. 12CV-5597) |
| Atlas Industrial Contractors, Ltd. et al., | : | |
| Defendants-Appellees, | : | (REGULAR CALENDAR) |
| (Hartford Casualty Insurance Company, | : | |
| Defendant-Appellant). | : | |
| Bluemile, Inc., | : | |
| Plaintiff-Appellant, | : | |
| v. | : | No. 16AP-791 |
| | | (C.P.C. No. 12CV-5597) |
| Atlas Industrial Contractors, Ltd. et al., | : | |
| | | (REGULAR CALENDAR) |
| Defendants-Appellees. | : | |

## D E C I S I O N

### Rendered on December 21, 2017

**On brief:** *Rutter & Russin, LLC, Robert P. Rutter* and *Robert A. Rutter*, for Bluemile, Inc. **Argued:** *Robert A. Rutter.*

**On brief:** *Mazza & Associates, LLC,* and *John P. Mazza*, for Atlas Industrial Contractors, LLC. **Argued:** *John P. Mazza.*

**On brief:** *Smith, Rolfes & Skavdahl Co., LPA,* and *James P. Nolan*; *Robins Kaplan LLC,* and *Scott G. Johnson*, for Hartford Casualty Insurance Company. **Argued:** *Scott G. Johnson.*

APPEALS from the Franklin County Court of Common Pleas

TYACK, P.J.

{¶ 1} In this consolidated appeal, defendant-appellant, Hartford Casualty Insurance Company ("Hartford"), appeals from the February 25, 2014 decision and entry of the Franklin County Court of Common Pleas denying Hartford's motion for summary judgment and granting plaintiff-appellee's, Bluemile, Inc. ("Bluemile"), motion for partial summary judgment and declaratory relief. In addition, Bluemile appeals from the September 19, 2016 decision and entry of the Franklin County Court of Common Pleas granting defendant-appellee's, Atlas Industrial Contractors, Ltd. ("Atlas"), motion for judgment notwithstanding the verdict ("JNOV"). For the reasons that follow, we affirm in part and reverse in part the judgment of the trial court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{¶ 2} Bluemile is a company that provides its clients cloud services, network services, data hosting, and voice services at its data center located at 226 North Fifth Street, Columbus, Ohio. On February 10, 2011, Bluemile suffered a temporary disruption in its service capabilities when an Atlas technician placed a noninsulated screwdriver into one of Bluemile's computer drives causing an electrical short and an interruption in Bluemile's service capabilities that lasted approximately two hours. During this period of time, Bluemile was unable to provide voice and other network services to its customers and as a result, customers left and Bluemile suffered a loss of voice and cloud business income.

{¶ 3} At the time of the incident, Bluemile had an effective insurance policy with Hartford and therefore Bluemile sought coverage from Hartford for its loss of business income. Hartford made some payments to Bluemile, but refused additional payments, and litigation ensued. Bluemile and Hartford disagreed about the duration of Extended Business Income ("EBI") coverage in the policy. After Bluemile submitted its claim, Hartford claimed that there was a typographical error in the policy and that EBI coverage was limited to a period of 90 days from the date of repair. Bluemile, however, claimed that there was no typographical error and the coverage was not limited to 90 days. The parties filed cross-motions for summary judgment on the issue of the duration of the EBI coverage. On February 25, 2014, the trial court granted Bluemile's motion for partial summary

judgment and denied Hartford's motion. The trial court declined to correct the alleged typographical error, and ruled that Hartford had to pay based on the policy as written.

{¶ 4} While the litigation was pending, Bluemile and Hartford agreed that under the terms of the policy, an appraisal hearing was needed. The appraisal panel was to determine the relevant and material facts concerning the dispute and to determine the amount of loss of Bluemile's business income ("BI") and EBI claims submitted to Hartford. The insurance policy defines and treats BI and EBI losses differently.

{¶ 5} The appraisal panel awarded Bluemile a grand total of $1,861,450 broken down among voice and cloud business. The trial court found Bluemile entitled to judgment against Hartford for its claimed EBI loss of voice and cloud business in the amount of $1,861,450 less the pre-appraisal payment of $172,920 and the post-appraisal payment of $203,304 for a grand total of $1,485,226, plus prejudgment interest from April 3, 2015. (Jan. 29, 2016 Decision and Entry on Bluemile's Motion for Order Confirming Appraisal Award at 13, 15.) All told, Hartford paid Bluemile $718,202—$545,282 for loss of cell phone/voice income and $172,920 for loss of cloud income.

{¶ 6} Both Bluemile and Hartford sued Atlas. Bluemile alleged Atlas breached its duty to perform electrical work for Bluemile in a reasonable manner by negligently inserting a noninsulated screwdriver into one of Bluemile's computer drives.

{¶ 7} Hartford had a right of subrogation, and sought to collect the money it had paid Bluemile to date. However, prior to trial, Atlas settled with Hartford for $315,000. The settlement was a lump sum that encompassed all voice and cloud damages already paid by Hartford ($718,202) plus any voice or cloud damages Hartford would have to pay in the future if it lost its appeal concerning the duration of EBI coverage in the policy.

{¶ 8} The jury returned a verdict of $1,000,000 against Atlas for voice damages, and a verdict of zero for cloud damages. Atlas filed a motion for JNOV pursuant to Civ.R. 50(B) seeking a setoff. The trial court set off the entire $718,202 paid to date by Hartford against the $1,000,000 jury verdict.

## II. ASSIGNMENTS OF ERROR

{¶ 9} Hartford appealed from the February 25, 2014 decision and entry of the trial court granting Bluemile's motion for partial summary judgment and declaratory relief and denying Hartford's motion for summary judgment. Hartford assigns the following as error:

> The trial court erred in granting summary judgment to Appellee Bluemile, Inc. and denying summary judgment to Appellant Hartford Casualty Insurance Co. on the issue of the duration of the Extended Business Income coverage provided by the Hartford policy.

{¶ 10} Bluemile appealed from the September 19, 2016 decision and entry of the trial court granting Atlas' motion for JNOV and setting off $718,202 paid by Hartford to Bluemile against the $1,000,000 jury verdict. Bluemile assigns the following as errors:

> [I.] The trial court erred in granting Atlas *any* setoff from the $1,000,000 verdict because Atlas did not prove that the damages awarded to Bluemile by the jury matched the damages for which Atlas paid Hartford.

> [II.] Even if Atlas proved that it was entitled to *some* setoff, the trial court erred in how it calculated the setoff.

## III. STANDARD OF REVIEW

{¶ 11} With respect to Hartford's appeal, we review a grant of summary judgment de novo, independently reviewing the record and affording no deference to the trial court's decision. *Patel v. Univ. of Toledo*, 10th Dist. No. 16AP-378, 2017-Ohio-7132, ¶ 9, citing *Holt v. State*, 10th Dist. No. 10AP-214, 2010-Ohio-6529, ¶ 9. Therefore, we undertake an independent review to determine whether Bluemile was entitled to judgment as a matter of law. Civ.R. 56(C).

{¶ 12} A motion for JNOV is governed by Civ.R. 50(B). The test applied by a trial court in ruling on a motion for JNOV is the same test to be applied on a motion for a directed verdict. *Kenner v. Grant/Riverside Med. Care. Found.*, 10th Dist. No. 15AP-982, 2017-Ohio-1349, ¶ 22. The record must be construed most strongly in favor of the party against whom the motion is made and, where there is substantial evidence to support its side of the case, on which reasonable minds may reach different conclusions, the motion must be denied. *Nickell v.* Gonzalez, 17 Ohio St.3d 136, 137 (1985). A ruling on a motion for JNOV is a question of law reviewed de novo on appeal. *Kenner* at ¶ 22, citing *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 25.

## IV. DURATION OF EXTENDED BUSINESS COVERAGE

{¶ 13} The issue of the duration of the extended business coverage under the Hartford policy is one of contract construction and interpretation. The construction and interpretation of written contracts involves issues of law that an appellate court reviews de novo. *Elec. Classroom of Tomorrow v. Ohio Dept. of Edn.*, 10th Dist. No. 16AP-863, 2017-Ohio-5607, ¶ 36.

{¶ 14} When parties to a contract dispute the meaning of the contract language, courts must first look to the four corners of the document to determine whether an ambiguity exists. *KeyBank Natl. Assn. v. Columbus Campus, LLC*, 10th Dist. No. 11AP-920, 2013-Ohio-1243, ¶ 27. "If the contract terms are clear and precise, the contract is not ambiguous and must be enforced as written." *Id.* In construing an insurance contract, the court is to look first at the plain and ordinary meaning of the language in the policy to understand the intent of the parties. *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, ¶ 11. Courts presume that the intent of the parties to a contract resides in the language they chose to employ in the agreement. *Dodge v. Dodge*, 10th Dist. No. 16AP-166, 2017-Ohio-7087, ¶ 24, citing *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130 (1987), paragraph one of the syllabus. When the terms in a contract are unambiguous, courts will not in effect create a new contract by finding intent not expressed in the clear language employed by the parties. *Alexander v. Buckeye Pipeline Co.*, 53 Ohio St.2d 241, 246 (1978). "A contract cannot be unilaterally modified, and parties to a contract must mutually consent to a modification." *Hanna v. Groom*, 10th Dist. No. 07AP-502, 2008-Ohio-765, ¶ 27.

{¶ 15} Contract language is ambiguous if its meaning cannot be determined from the four corners of the contract or if the contract language is susceptible to two or more conflicting, yet reasonable interpretations. *Id.*, citing *Covington v. Lucia*, 151 Ohio App.3d 409, 2003-Ohio-346, ¶ 18 (10th Dist.)

{¶ 16} The test to be applied in determining whether there is an ambiguity is not what the insurer intended it to mean, but what a reasonably prudent person applying for insurance would have understood. *Snedegar v. Midwestern Indem. Co.*, 64 Ohio App.3d 600, 604 (10th Dist.1989), citing 2 Couch on Insurance 2d (1984) 438, Section 15:92. "Thus, the criterion is ambiguity from the standpoint of a layman, not a lawyer." *Id.*

{¶ 17} In addition, Ohio follows the doctrine of contra proferentum, which means that "[l]anguage in a contract of insurance reasonably susceptible of more than one meaning will be construed liberally in favor of the insured and strictly against the insurer." *Buckeye Union Ins. Co. v. Price*, 39 Ohio St.2d 95 (1974), syllabus. "In the insurance context, the insurer customarily drafts the contract. Thus, an ambiguity in an insurance contract is ordinarily interpreted against the insurer and in favor of the insured." *Westfield Ins. Co.* at ¶ 13, citing *King v. Nationwide Ins. Co.*, 35 Ohio St.3d 208 (1988), syllabus.

{¶ 18} In this case, one must consult three different sections of the policy to determine the relevant policy language: the Special Property Coverage Form, modified by the Actual Loss Sustained Business Income & Extra Expense-Specified Limit Coverage endorsement, which is further modified by the Super Stretch for Technology and Software Service Providers endorsement. After piecing together these provisions, the operative EBI language in the Hartford policy is as follows:

> Extended Business Income
>
> We will pay for the actual loss of Business Income you incur during the period that:
>
> (1) Begins on the date property is actually repaired, rebuilt or replaced and "operations" are resumed; and
>
> (2) Ends on the earlier of:
>
> (a) The date you could restore your "operations" with reasonable speed, to the condition that would have existed if no direct physical loss or physical damage occurred; or
>
> (b) 90 consecutive days after the date determined in (a) above.

(Emphasis omitted.) (Sept. 23, 2013, Joint Stip. Ex. A1, as modified by changing 30 days to 90 days at 2231, 2233 & 2241.)

{¶ 19} The parties dispute the language in subsection (2). Bluemile argues that subsection (2)(a) governs the length of the EBI coverage, while Hartford contends that there is a typographical error in subsection (2)(b) and that the "(a)" in subsection 2(b) should actually be "(1)," thus limiting the length of time for coverage to 90 days from the date of repair and resumption of operations.

{¶ 20} The plain language of the policy indicates that EBI coverage ends on the date Bluemile could restore its operations to the condition they were in prior to the service interruption or 90 consecutive days after such restoration, whichever is earlier. One can then infer that subsection (2)(b), the second of the two end dates, could never apply because that end date, 90 consecutive days after end date (a), could never be earlier than end date (a). Thus the policy, as written, provides EBI coverage until Bluemile is made whole. Bluemile asks the court to enforce the policy as written.

{¶ 21} Hartford however, contends that this is not the coverage it intended to provide, but is the result of a scrivener's error in drafting the policy. Hartford proposes that by changing the "(a)" in subsection (2)(b) to a "(1)" the provision makes sense and is the most reasonable interpretation as it gives effect to both (a) and (b) in subsection (2) . Hartford argues that doing so is not resolving an ambiguity or rewriting the policy but simply correcting an obvious typographical error. Hartford claims it is not seeking reformation, but rather an alternative, more reasonable interpretation that would cut off EBI coverage 90 consecutive days after the property is repaired and operations are resumed.

{¶ 22} Hartford relies on the case of *Farmers' Natl. Bank v. Delaware Ins. Co.*, 83 Ohio St. 309 (1911) in which the Supreme Court of Ohio held at paragraph six of the syllabus:

> In the construction of a contract courts should give effect, if possible, to every provision therein contained, and if one construction of a doubtful condition written in a contract would make that condition meaningless, and it is possible to give it another construction that would give it meaning and purpose, then the latter construction must obtain.

{¶ 23} Here, the only way to give subsection (2)(b) the meaning that Hartford wants is to alter the contract as written by deleting one character and inserting another into the provision. Changing the "a" to a "1" is not interpreting the contract, it is rewriting the contract. A court may not rewrite a contract under the guise of construing it. *See Aultman Hospital Assn.* at 51 ("The contract construction urged by the hospitals would not be a construction at all but would amount to the making of a new contract for the parties which is not the function of the court.").

{¶ 24} We believe the proper test to be applied is not what the insurer now says it intended the words to mean, but rather "a reasonable construction of the document in conformity with the intention of the parties as gathered from the ordinary and commonly understood meaning of the language actually employed." *Royal Paper Stock Co. v. Robinson*, 10th Dist. No. 12AP-455, 2013-Ohio-1206, ¶ 30. Here, the alleged typographical error is not obvious, and it is not readily apparent that a layperson attempting to read three sections of the policy together would realize that the section contains an error. This is confirmed by the fact that the alleged typographical error had been in the policy for at least six years without discovery. (*See* Oct. 11, 2013 Reply of Defendant Hartford at 4.) Not until Bluemile made a claim for coverage did Hartford seek to interpret the policy to mean something other than what it says on the face of the contract. Thus, we will not rewrite the policy to conform to Hartford's interpretation.

{¶ 25} The actual language of the policy is clear, at least as clear as a policy can be where one must piece together multiple provisions. Applying the test set forth in *Snedegar* at 604, a reasonably prudent person applying for EBI coverage would have understood the policy to mean that EBI coverage would end on the date the insured could restore its operations with reasonable speed, to the condition that would have existed if no direct physical loss or physical damage occurred. If there is an ambiguity as to whether that date or 90 days after operations are restored is earlier, any such ambiguity should be resolved in favor of the insured. Accordingly, we overrule Hartford's assignment of error.

## V. ENTITLEMENT TO SETOFF

{¶ 26} Bluemile contests the trial court's decision to setoff $718,202 from the jury award of $1,000,000.

{¶ 27} The parties agreed prior to trial that only Bluemile and Atlas would actively participate in the trial of the tort claim. The jury was not told that Hartford insured Bluemile and was seeking reimbursement from Atlas for the $718,202 it had paid Bluemile. Absent a settlement agreement, if a verdict were returned for Bluemile, Hartford's right of subrogation would be addressed by the trial court as a matter of law. However, prior to trial, Hartford settled with Atlas. In the release and waiver of all subrogation claims, Hartford agreed to accept $315,000 as full satisfaction of its subrogation claims against

Atlas. Thus, Hartford extinguished all recovery or remedy rights it had against Atlas. The jury was not apprised of the settlement.

{¶ 28} The jury found damages in the amount of $1,000,000. Based on the interrogatories returned by the jury, the $1,000,000 jury award was for voice damages only. However, the $718,202 payment from Hartford to Bluemile was for both loss of voice and cloud business income, consisting of $545,282 paid for voice damages and $172,920 paid for cloud damages.

{¶ 29} Atlas moved for JNOV claiming that it was entitled to a setoff of $718,202 from the jury award of $1,000,000 based on the total amount Hartford had paid to Bluemile to date. Atlas argued it was entitled to the setoff to prevent double recovery by Bluemile of the same damages. The trial court agreed and ordered the full amount of $718,202 be set off to prevent Bluemile from reaping a double recovery.

{¶ 30} On appeal, Bluemile claims that the trial court erred in granting Atlas *any* setoff from the $1,000,000 verdict because Atlas did not prove that the damages awarded to Bluemile by the jury matched the damages for which Atlas paid Hartford. Alternatively, Bluemile argues that even if Atlas proved that it was entitled to *some* setoff, the trial court erred in how it calculated the setoff.

{¶ 31} Atlas claims that its $315,000 settlement with Hartford in exchange for Hartford agreeing not to seek recovery from Atlas of the $718,202 it had paid Bluemile or any amounts it might be required to pay in the future, is grounds for a setoff of $718,202, the amount paid up to this point by Hartford to Bluemile. Atlas has stated that it intends to seek additional setoff if Hartford's appeal is unsuccessful and Hartford must pay additional sums to Bluemile. Our resolution of the issue of the duration of EBI coverage raises the distinct possibility that Atlas will pursue additional setoff, and Bluemile's judgment against Atlas will be reduced to zero.

{¶ 32} There are a number of principles that apply to the issues of setoff and collateral benefits, and some of these principles are in conflict or tension with each other.

{¶ 33} In general, a tortfeasor can only be liable for 100 percent of the damages it proximately caused. Here, a jury determined that Atlas was liable for $1,000,000 of voice damages. Thus, even when, as here, a tortfeasor faces two claims, one by Bluemile, the

insured victim, and another by Hartford, the victim's subrogated insurer, Atlas can only be liable for 100 percent of the damages it caused.

{¶ 34} The collateral source rule is an exception to the general rule of compensatory damages in a tort action. "The collateral source rule has been defined as 'the judicial refusal to credit to the benefit of the wrongdoer money or services received in reparation of the injury caused which emanates from sources other than the wrongdoer.' " *Pryor v. Webber,* 23 Ohio St.2d 104, 107 (1970), quoting *Maxwell*, The Collateral Source Rule in the American Law of Damages, 46 Minn. L.Rev. 669, 670. Therefore, benefits received by the plaintiff from a source collateral to the wrongdoer will not diminish the damages otherwise recoverable from the wrongdoer. Under the common law collateral source rule, evidence of compensation a plaintiff received from collateral sources was not admissible to diminish the damages a tortfeasor was required to pay for his negligent act. *Pryor* at paragraph two of the syllabus. Thus, the collateral source rule operated to, at times, allow a plaintiff to receive double recovery on some items of damages. *Adae v. State*, 10th Dist. No. 12AP-406, 2013-Ohio-23, ¶ 17. Since *Pryor*, the General Assembly has enacted many statutes to limit the effect of the rule. *Adae* at ¶ 18.

{¶ 35} The rule is grounded in the policy that a tortfeasor should be liable for the damages caused by its wrongdoing, and if any windfall results because of an outside payment, it is the innocent party who should benefit and not the one whose wrongful act caused injury. 30 Ohio Jurisrudence 3d, Damages Section 106. Or stated another way, should Atlas receive a windfall because Bluemile was prudent and had the foresight to purchase insurance?

{¶ 36} The collateral source rule is in tension with the principle that the basis for granting a defendant a setoff for settlement funds is that a plaintiff should not receive more than one recovery for the same damages. *See Celmer v. Rodgers*, 11th Dist. No. 2004-T-0083, ¶ 27 ("Setoff of settlement funds has been recognized as a means to protect against the danger of a double recovery in cases where settlement agreements have been entered into by co-defendants."); *See also Herlihy Moving & Storage, Inc. v. Adecco USA, Inc.*, 772 F.Supp.2d 898, 899 (S.D. Ohio 2011) ("the basis for granting a defendant a setoff in the amount of damages it owes is the notion that a plaintiff should not receive more than one recovery for the same damages."). Thus, on the one hand, a plaintiff should not receive

more than one recovery for the same set of damages, but on the other hand, a tortfeasor should not be granted a windfall by allowing him credit for payments made by a third party. Here, an application of the collateral source rule would allow Bluemile to be compensated twice for some damages as long as the double recovery is not coming from Atlas.

{¶ 37} Another principle on the issue of setoff is that a defendant who seeks to take advantage of a setoff credit has the burden of proving the amount of credit to which he is entitled. *Id.* at 900; *see also Goodrich Corp. v. Commercial Union Ins. Co.*, 9th Dist. No. 23585, 2008-Ohio-3200, ¶ 39. The party seeking setoff must prove that the loss for which the collateral benefit compensates is actually included in the jury award. *Adae* at ¶ 28; *Buchman v. Bd. of Edn.*, 73 Ohio St.3d 260, 269 (1995) (dealing with damages against a political subdivision); *Holeton v. Crouse Cartage Co.*, 92 Ohio St.3d 115, 122 (2001) (discussing constitutionality of various collateral benefits offset statutes).

{¶ 38} Bluemile contends that Atlas did not prove that the damages awarded by the jury matched the damages paid for by Hartford. Atlas was allowed a setoff for the full amount of the insurer's subrogation claim, but $172,920 of that claim was for cloud damages. The jury did not award any sum for cloud damages. The $718,202 paid by Hartford was broken down to be $545,282 for voice damages in the first 90 days and $172,920 for cloud damages. It is undisputed that of the $718,202 setoff from the $1,000,000 verdict, $172,920 was for cloud damages. Therefore, at the very least, Atlas has failed to meet its burden of proving that $178,202 paid by Hartford for cloud damages was part of the jury's award.

{¶ 39} Atlas has stated that it intends to seek further setoff if Bluemile wins its appeal against Hartford. Atlas states that there is a strong public policy against double recovery, but to fully accept this argument would result in Atlas, the tortfeasor, having its judgment reduced to zero because Bluemile was prudent enough to purchase first-party property insurance from Hartford. Atlas would be able to satisfy the $1,000,000 jury verdict by paying only $315,000, the amount of its settlement with Hartford.

{¶ 40} Atlas should not have to pay more than 100 percent of the damages it proximately caused. A jury determined that Atlas was liable for $1,000,000 in voice damages. Hartford had a right of subrogation and settled with Atlas for $315,000 encompassing all voice and cloud damages previously paid and any additional damages

that Hartford would have to pay if it lost its appeal against Bluemile. Any setoff should be limited to the amount Atlas paid to settle the subrogation claim. A setoff of $315,000 from the $1,000,000 verdict results in Atlas paying 100 percent of the damages a jury found it liable for.

{¶ 41} The case of *Hayes Sight & Sound, Inc. v. ONEOK, Inc.*, 281 Kan. 1287, 136 P.3d 428 (2006) is instructive on this point. In that case, a fire caused by ONEOK's negligence damaged two businesses, one insured by Hartford and one insured by State Farm. The businesses were compensated by their insurers and then filed suit against ONEOK. ONEOK settled with the insurance companies for undisclosed amounts. The businesses then obtained a verdict against ONEOK for an amount in excess of what they had been paid by their insurers. ONEOK asked for a setoff of the full amount the insurers had paid the businesses. The court held that the defendants were entitled to a setoff of the settlement amounts of the subrogation claims, not the full amount of the subrogation claims, explaining as follows:

> We disagree with the defendants that the setoff should be in the amount of the insurer's subrogation claim. To do so would allow the defendants to escape paying the full amount of plaintiffs' damages. The defendants are entitled to a setoff in the amount they paid to the plaintiffs' insurers to settle the subrogation claim. If that payment was less than the amount of the insurers' subrogation claim, the plaintiffs can retain the difference, and to that extent double recovery is permissible.

*Id.* at 281 Kan. 1306.

{¶ 42} We believe that a setoff in the amount of $315,000, the amount paid to settle the subrogation claim, strikes the appropriate balance between the collateral source rule and the principle that a plaintiff should not receive more than one recovery for the same set of damages. In this way, Atlas is held fully liable for its wrongdoing. Absent a setoff, Atlas will pay more than the amount of the jury award.

{¶ 43} Based on the foregoing, we overrule Bluemile's first assignment of error, and sustain the second assignment of error.

## VI. CONCLUSION

{¶ 44} In summary, Hartford's sole assignment of error is overruled. Bluemile's first assignment of error is overruled and the second assignment of error is sustained. The

judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and the matter is remanded for further proceedings in accordance with law and consistent with this decision.

*Judgment affirmed in part, reversed in part;*
*cause remanded for further proceedings.*

**KLATT and HORTON JJ., concur.**

_____