[Cite as *Fendley v. Wright State Univ.*, 2019-Ohio-1963.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Ryan Fendley, :

    Plaintiff-Appellant, :

                                     No. 18AP-113

v. : (Ct. of Cl. No. 2015-1059)

Wright State University, : (REGULAR CALENDAR)

    Defendant-Appellee. :

D E C I S I O N

Rendered on May 21, 2019

**On brief:** *Eberly McMahon Copetas LLC*, *Theodore C. Copetas*, and *David A. Eberly*, for appellant. **Argued:** *Theodore C. Copetas*.

**On brief:** *Dave Yost*, Attorney General, *Lee Ann Rabe*, and *Jeanna V. Jacobus*, for appellee. **Argued:** *Jeanna V. Jacobus*.

APPEAL from the Court of Claims of Ohio

KLATT, P.J.

{¶ 1} Plaintiff-appellant, Ryan Fendley, appeals a judgment of the Court of Claims of Ohio in favor of defendant-appellee, Wright State University. For the following reasons, we reverse that judgment and remand this matter to the trial court.

{¶ 2} Wright State employed Fendley as an unclassified staff member for 11 years. In May 2015, Fendley was working as the senior advisor to the provost when the university placed him on indefinite paid administrative leave. David R. Hopkins, then the president of Wright State, instituted the leave because the federal government was investigating whether Fendley, along with two other Wright State employees, had engaged in visa fraud.

On May 4, 2015, Hopkins informed Fendley about the federal investigation and handed him a letter, which, in relevant part, stated:

> As you are aware, Wright State University continues to cooperate with an ongoing outside investigation. The University has begun its own internal investigation, as well. In furtherance of the investigations, the University hereby places you on paid administrative leave from your position as Senior Advisor until further notice.

(Pl.'s Ex. 4.)

{¶ 3} In August 2015, Hopkins met with federal attorneys to discuss the ongoing visa fraud investigation. After that meeting, Hopkins believed that "three individuals employed by Wright State had conspired to commit visa fraud," and he decided that "it was in the best interest of the university to remove all three from * * * their administrative positions." (Tr. at 82.) Fendley was one of those individuals. Consequently, in a letter to Fendley dated August 12, 2015, Hopkins stated:

> You were informed on May 4, 2015 that you were being placed on a paid administrative leave as a result of an ongoing outside investigation, as well as an internal investigation.
>
> Subsequent to your paid administrative leave and as a result of the ongoing investigation, I have determined that it is in the University's best interests to end our employment relationship with you.
>
> As a result, this letter is to inform you that you are being terminated from your position at Wright State University, effective Wednesday, August 12, 2015.

(Pl.'s Ex. 5.)

{¶ 4} At the time of Fendley's firing, an employment policy known as the Wright Way Policy No. 4004 governed the conditions of employment for the unclassified staff. Wright Way Policy No. 4004.1, entitled "Termination Notification," provided:

> a. The unclassified staff of Wright State University who have been hired on a Continuing Employment Agreement can be terminated by the university. The affected staff members shall be notified in writing as specified in the following paragraphs.
> * * *

b. Employees can be terminated for documented just cause as provided in applicable laws, rules, and regulations or because of financial exigency, without notice. * * *

c. Notice of termination without just cause shall be as follows:

| Term of Employment | Notification |
| --- | --- |
| Less than 3 years | 2 months |
| At least 3 years but less than 6 years | 6 months |
| At least 6 years but less than 15 years | 9 months |
| 15 or more years | 1 year (12 months) |

(Pl.'s Ex. 3.) Wright State did not provide Fendley any notice prior to terminating his employment.

{¶ 5} On December 24, 2015, Fendley filed suit against Wright State, alleging a claim for breach of contract. Fendley contended that Wright State's failure to provide him advance notice of his discharge violated the contractual terms governing his employment. Because Fendley had worked for Wright State for 11 years, he claimed that Wright Way Policy No. 4004.1 entitled him to nine months' notice.

{¶ 6} A trial before a magistrate occurred. At that trial, the parties litigated whether Wright State had terminated Fendley's employment for "documented just cause as provided in applicable laws, rules, and regulations." If Wright State discharged Fendley for "documented just cause as provided in applicable laws, rules, and regulations," then it owed Fendley no notice. On the other hand, if Wright State discharged Fendley without such just cause, then it breached its contractual obligation to provide Fendley nine months' notice prior to terminating his employment.

{¶ 7} During the trial, the parties presented the evidence set forth above. Additionally, Fendley testified that he was not involved in securing the visas at issue in the federal investigation, and he stated that he was never indicted for visa fraud.

{¶ 8} In a decision dated September 19, 2017, the magistrate recommended that the trial court issue a judgment in favor of Wright State. The magistrate explained:

Upon review of the testimony and evidence presented, the magistrate finds that defendant terminated plaintiff's

> employment for documented just cause. * * * Although plaintiff was not indicted, and he had no personal involvement with procuring H1-B visas, the magistrate finds that the fact that plaintiff was under investigation by the federal government for visa fraud constitutes "just cause" for his termination. * * * The magistrate further finds that defendant complied with Wright Way Policy [No.] 4004.1, when it sent him two letters referring to an ongoing investigation, the nature of which plaintiff was aware.

(Sept. 19, 2017 Decision of the Mag. at 5-6.)

{¶ 9} Fendley objected to the magistrate's decision. In a judgment entered January 19, 2018, the trial court overruled all Fendley's objections. The trial court agreed with the magistrate that the federal visa investigation targeting Fendley constituted just cause for Fendley's termination and the May and August 2015 letters adequately documented the university's just cause for its decision to discharge Fendley. The trial court, therefore, entered judgment for Wright State.

{¶ 10} Fendley now appeals the January 19, 2018 judgment, and he assigns the following errors:

> [1.] THE COURT OF CLAIMS' DETERMINATION THAT WRIGHT STATE TERMINATED MR. FENDLEY FOR JUST CAUSE IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
>
> [2.] THE COURT OF CLAIMS' DETERMINATION THAT WRIGHT STATE HAD "DOCUMENTED" JUST CAUSE TO TERMINATE MR. FENDLEY IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
>
> [3.] THE COURT OF CLAIMS ABUSED ITS DISCRETION BY ADMITTING DR. HOPKINS' TESTIMONY ABOUT WHAT INVESTIGATING U.S. ATTORNEYS TOLD HIM.
>
> [4.] THE COURT OF CLAIMS ABUSED ITS DISCRETION BY ADMITTING DR. HOPKINS' TESTIMONY ABOUT WHAT HE BELIEVED ABOUT MR. FENDLEY'S CONDUCT, BECAUSE SUCH TESTIMONY LACKED FOUNDATION AND WAS IRRELEVANT.

{¶ 11} We will address Fendley's first two assignments of error together because they are interrelated. By those assignments of error, Fendley asserts that the manifest

weight of the evidence does not support the trial court's conclusion that Wright State fired Fendley for "documented just cause as provided in applicable laws, rules, and regulations." We agree.

{¶ 12} Before considering the evidence, we must segregate the undisputed issues in this case from the sole issue before us. First, Wright State does not contest that it and Fendley shared a contractual relationship and that Wright Way Policy No. 4004.1 was a term of the parties' employment contract. Wright State also does not dispute that it could only dispense with providing Fendley a termination notice if it discharged Fendley for "documented just cause as provided in applicable laws, rules, and regulations." The point of contention in this case is the meaning of the phrase "documented just cause as provided in applicable laws, rules, and regulations." Thus, we must first interpret that phrase.

{¶ 13} Interpretation of contracts is a matter of law, and questions of law are subject to de novo review on appeal. *St. Marys v. Auglaize Cty. Bd. of Commrs.*, 115 Ohio St.3d 387, 2007-Ohio-5026, ¶ 38. When construing a contract, a court's principle objective is to ascertain and give effect to the intent of the parties. *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.*, 86 Ohio St.3d 270, 273 (1999). "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130 (1987), paragraph one of the syllabus. In determining the parties' intent, a court must construe the contract as a whole and give effect, if possible, to every part of the contract. *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 361-62 (1997). If an undefined term is used in a contract, a court will give that word its ordinary meaning, unless manifest absurdity results or some other meaning is clearly evidenced in the contract. *Sunoco, Inc. (R&M) v. Toledo Edison Co.*, 129 Ohio St.3d 397, 2011-Ohio-2720, ¶ 38.

{¶ 14} Here, the term "just cause" appears at the core of the phrase "documented just cause as provided in applicable laws, rules, and regulations." Wright Way Policy No. 4004 does not define that term. In the employment context, "just cause" " 'is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act.' " *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Servs.*, 73 Ohio St.3d 694, 697 (1995), quoting *Irvine v. Unemployment Comp. Bd. of Review*, 19 Ohio St.3d 15, 17 (1985). This definition correlates with the ordinary meanings of "just," defined as "having a basis

in fact:  REASONABLE, WELL-FOUNDED, JUSTIFIED," and "cause," defined as "a reason or motive for an action."  *Webster's Third New International Dictionary* 1228, 356 (1966). Consequently, we will use this definition to interpret Wright Way Policy No. 4004.1.

{¶ 15} Two descriptors modify the term "just cause:"  (1) "documented" and (2) "as provided in applicable laws, rules, and regulations."  While the parties do not dispute the meaning of "documented," they do not agree on the meaning of "as provided in applicable laws, rules, and regulations."  Quite simply, the phrase "just cause as provided in applicable laws, rules, and regulations" means that applicable laws, rules, and regulations must provide the just cause for the discharge decision.  An employer may find just cause to discharge an employee in an applicable law, rule, or regulation if an employee fails to perform as directed in a law, rule, or regulation or ignores a prohibition in a law, rule, or regulation.  Thus, for example, an employer would have just cause to fire a tardy employee who violates a rule requiring timely attendance or an employee who engages in sexual harassment in contravention of laws and rules prohibiting such behavior.  Because in such scenarios just cause arises from a law, rule, or regulation, Wright State would not owe the tardy or harassing employee any notice prior to firing the employee.

{¶ 16} The trial court, however, found that the phrase "just cause as provided in applicable laws, rules, and regulations" meant that Wright State had just cause to fire employees for any lawful reason.  If the phrase at issue read "as provided in law," we would agree with the trial court's construction.  But, given the dissimilarity between the phrases "as provided in applicable laws, rules, and regulations" and "as provided in law," we cannot accept the trial court's interpretation.

{¶ 17} The phrase "as provided in law" differs in meaning from "as provided in applicable laws, rules, and regulations" due to the wide variety of reasons an employer may legally discharge an at-will employee, like Fendley.  Basically, an employer may terminate the employment of an at-will employee for any reason not contrary to law.  *Ressler v. Atty. Gen.*, 10th Dist. No. 14AP-519, 2015-Ohio-777, ¶ 27.  As a consequence, at-will employees face discharge for good reasons, bad reasons, or no reason at all.  *Id.*  In other words, an employer may legally fire an at-will employee for a reason not provided for in an applicable law, rule, or regulation.  Therefore, by interpreting the phrase at issue to permit a just-cause discharge for any lawful reason, the trial court deviated from and expanded the contractual

language.  This rewriting of a contract is impermissible.  *See Bluemile, Inc. v. Atlas Indus. Contrs., Ltd.*, 10th Dist. No. 16AP-789, 2017-Ohio-9196, ¶ 23 ("A court may not rewrite a contract under the guise of construing it.").  In interpreting a contract, a court must give effect to the words used, not insert new words.  *Cleveland Elec. Illuminating Co. v. Cleveland*, 37 Ohio St.3d 50, 53 (1988).

{¶ 18} Having determined the meaning of the phrase "documented just cause as provided in applicable laws, rules, and regulations," we can now consider Fendley's manifest-weight challenge.  Appellate courts will only reverse a judgment as being against the manifest weight of the evidence if it is not supported by some competent, credible evidence.  *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 280 (1978).  In determining whether the record contains the necessary evidence, an appellate court weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way.  *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20.  However, when conducting its review, an appellate court "must always be mindful of the presumption in favor of the finder of fact."  *Id.* at ¶ 21.  Appellate courts give deference to the trial court's factual findings because "the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."  *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

{¶ 19} Here, the trial court discussed two reasons for Fendley's termination:  (1) he was the target of a federal investigation into visa fraud, and (2) Hopkins believed that Fendley had actually committed visa fraud.  We, therefore, must review the evidence to determine whether either of these reasons constitute "documented just cause as provided in applicable laws, rules, and regulations," thus justifying Wright State's failure to provide Fendley with a pre-discharge notice.

{¶ 20} We will first consider Hopkins' belief that Fendley engaged in visa fraud.  According to Wright State, it documented this reason for Fendley's discharge in the letters of May 4, 2015 and August 12, 2015.  While both letters refer to an "ongoing outside investigation," neither letter mentions or suggests that Hopkins believed that Fendley had committed visa fraud.  (Pl.'s Ex. 4 & 5.)  Wright State, therefore, did not document Hopkins'

belief in Fendley's guilt. Consequently, that reason for Fendley's firing does not qualify as "documented just cause as provided in applicable laws, rules, and regulations."

{¶ 21} The second reason offered for Fendley's termination was the existence of the federal investigation into visa fraud. The trial court found that reason documented in the May and August 2015 letters. We agree with the trial court's finding. Both letters name the "ongoing outside investigation" as the reason motivating the university's actions. (Pl.'s Ex. 4 & 5.) The allusions to an "ongoing outside investigation" could only refer to the federal visa fraud investigation. Thus, the existence of the federal investigation into Fendley's conduct was the documented reason for Fendley's discharge.

{¶ 22} We next must consider whether the federal investigation is a reason for discharge that is "provided in applicable laws, rules, and regulations." Fendley asserts that the evidence establishes that mere investigation into potential wrongdoing is not a just cause for discharge "as provided in applicable laws, rules, and regulations." The record contains evidence supporting this assertion. First, Fendley introduced into evidence Wright State's answer to an interrogatory asking Wright State to "[i]dentify any and all policies, procedures, rules, regulations or laws that Defendant believes Plaintiff violated." (Pl.'s Ex. 1 at No. 3.) Wright State did not claim that being under investigation contravened a law, rule, or regulation. Instead, Wright State replied that then "President Hopkins understood, after a meeting with Assistant United States Attorneys, that Plaintiff allegedly engaged in criminal behavior related to immigration matters while employed at Wright State University." *Id.* Because Wright State named the alleged visa fraud as the sole violation of a law, rule, or regulation, Wright State tacitly admitted that the documented cause for Fendley's firing—the federal investigation—did not violate a law, rule, or regulation. Second, during trial, Hopkins conceded that he was not aware of Wright State ever documenting that Fendley violated any law, rule, or regulation. Because the existence of the federal investigation was documented, Hopkins' testimony amounts to a concession that being under investigation does not violate any law, rule, or regulation. Finally, Fendley acknowledged the existence of the federal investigation, but stated that he had not violated any laws, rules, or regulations in connection with his employment at Wright State. Given the foregoing evidence, we can only conclude that the existence of a federal investigation is not a reason for discharge "as provided in applicable laws, rules, and regulations."

Therefore, the federal investigation does not constitute "documented just cause as provided in applicable laws, rules, and regulations."

{¶ 23} In sum, neither of the reasons advanced for Fendley's discharge qualifies as "documented just cause as provided in applicable laws, rules, and regulations." We conclude, therefore, that the trial court's finding that Wright State fired Fendley for "documented just cause as provided in applicable laws, rules, and regulations" is against the manifest weight of the evidence. Consequently, we sustain Fendley's first assignment of error.

{¶ 24} Fendley's second assignment of error challenges only the trial court's conclusion that Wright State documented the cause of his discharge. We have concluded that the manifest weight of the evidence shows that documentation of the federal investigation occurred, so we overrule the second assignment of error.

{¶ 25} Our resolution of Fendley's first assignment of error requires us to reverse the trial court's decision. Accordingly, the third and fourth assignments of error are moot, and we will not rule upon them.

{¶ 26} For the foregoing reasons, we sustain Fendley's first assignment of error and overrule Fendley's second assignment of error. Our ruling on Fendley's first assignment of error moots the third and fourth assignments of error. We reverse the judgment of the Court of Claims of Ohio, and we remand this matter to that court so that it may determine the amount of damages to award Fendley.

*Judgment reversed; cause remanded.*

BROWN, J., concurs.
SADLER, J., concurs in part and dissents in part.

SADLER, J., concurring in part and dissenting in part.

{¶ 27} Because I agree with the trial court that the university president's good-faith belief that Fendley was guilty of visa fraud provided Wright State with documented just cause for termination of Fendley's employment, without notice, I would overrule Fendley's first and second assignments of error, proceed to a consideration of Fendley's third and fourth assignments of error, and overrule those assignments of error as well. Because the majority sustained Fendley's first assignment of error, I respectfully concur in part and dissent in part.

{¶ 28}  In Fendley's first and second assignments of error, Fendley contends the trial court's determination that Wright State terminated his employment for documented just cause, as provided in applicable laws, rules, and regulations, is against the manifest weight of the evidence.  In sustaining Fendley's first assignment of error, the majority finds that Wright State failed to document the university president's good-faith belief that Fendley was guilty of visa fraud.  Based on this finding, the majority overrules the decision of the trial court without making any determination whether the weight of the evidence supports the trial court's conclusion that university president Holbrook held a good-faith belief that Fendley was guilty of visa fraud or whether Holbrook's good-faith belief in Fendley's guilt provided Wright State with just cause for termination of Fendley's employment, without notice, as provided in applicable laws, rules, and regulations.

{¶ 29}  In holding that Wright State failed to document Hopkins' belief that Fendley had committed visa fraud, the majority acknowledges that the term "documented," as used in Wright State Policy No. 4004.1, is not defined in the parties' agreement.  Hopkins' letter to Fendley, dated August 12, 2015, states:

> You were informed on May 4, 2015 that you were being placed on a paid administrative leave as a result of an ongoing outside investigation, as well as an internal investigation.
>
> Subsequent to your paid administrative leave and *as a result of the ongoing investigation, I have determined that it is in the University's best interests to end our employment relationship with you.*
>
> As a result, this letter is to inform you that you are being terminated from your position at Wright State University, effective Wednesday, August 12, 2015.

(Emphasis added.)  (Pl.'s Ex. 5.)

{¶ 30}  The majority concedes the ongoing investigation mentioned in the August 12, 2015 letter "could only refer to the federal visa fraud investigation."  (Majority Decision at ¶ 21.)  The majority also acknowledges the letter of May 4, 2015 adequately documents the existence of the federal investigation as the reason for the suspension, even though the terms "just cause," "visa fraud," or "federal" do not appear in the May 4, 2015 letter.  In his August 12, 2015 letter to Fendley, Hopkins uses the following language: "[A]s a result of the

ongoing investigation, *I have determined* that it is in the University's best interests to end our employment relationship with you."  (Emphasis added.)

{¶ 31} Fendley testified that in February or March 2015, Hopkins told him of an ongoing investigation into suspected visa fraud at Wright State and that he could contact the Ohio Attorney General for further information.  Fendley was subsequently told by someone at the Ohio Attorney General's Office that investigators would need access to his office and computer.  In March 2015, Fendley hired private counsel to represent him in any potential criminal proceeding involving visa fraud.  On May 4, 2015, Fendley received the letter suspending him with pay due to the ongoing investigation of visa fraud.  Several months later, Fendley received the August 12, 2015 letter from Hopkins informing Fendley, "as a result of the ongoing investigation, *I have determined* that it is in the University's best interests to end our employment relationship with you."  (Emphasis added.)  In my view, the evidence supports the trial court's finding that Hopkins' August 12, 2015 letter to Fendley adequately documents Hopkins' subjective belief of Fendley's guilt as the reason for Fendley's discharge.

{¶ 32} The majority concludes the trial court misinterpreted the language of Policy No. 4004.1 in finding that Wright State had the right to terminate Fendley's employment, without notice, for any reason not prohibited by law.  In my view, the majority mischaracterizes the trial court's conclusion.  The trial court construed Policy No. 4004.1 as authorizing Wright State to discharge an unclassified employee, without notice, for any documented business reason, not contrary to law.  Moreover, as previously noted, the trial court found the documented reason for Fendley's discharge was Hopkins' good-faith belief, based on the ongoing federal investigation, that Fendley had committed visa fraud.  The trial court concluded Hopkins' good-faith belief in Fendley's guilt fit within "the plain and ordinary meaning of 'just cause.' "  (Jan. 19, 2018 Decision at 6.)

{¶ 33} I do not disagree with the majority's conclusion that Policy No. 4004.1 modified Fendley's at-will employment agreement in some meaningful way.  However, it cannot be seriously maintained that federal laws proscribing visa fraud are not applicable to Wright State and its employees.  Nor can it be reasonably concluded that Policy No. 4004.1 prohibited Wright State from discharging Fendley for suspected visa fraud absent indictment or conviction.  Had the parties intended an indictment or conviction to be

required, they certainly would have spelled that out in Policy No. 4004.1 or elsewhere in the policy manual. Furthermore, to the extent Policy No. 4004.1 requires the documented reason for discharge to be a suspected violation of a law, rule, or regulation directly related to Fendley's employment at Wright State, there is no dispute in this case that the federal investigation of visa fraud involved foreign workers employed as research assistants on Wright State affiliated projects.

{¶ 34} Under Ohio law, an employee may not be terminated under the just cause provision of an employment contract unless he engages in misconduct that necessarily injures the place of employment. *Zimmerman v. Eagle Mtge. Corp.*, 110 Ohio App.3d 762, 774 (2d Dist.1996). Where an employee who is accused of misconduct denies the allegations, an employer is required to determine just cause with good faith and on the basis of substantial evidence. *Young v. Am. Diabetes Assn.*, 30 F.Appx. 360, 364 (6th Cir.2002), citing *Chrvala v. Borden, Inc.*, 14 F.Supp.2d 1013, 1017 (S.D.Ohio 1998). In such cases, the issue for the trier of fact is to determine whether the employer acted in good faith, not to adjudicate the merits of the facts or suspicions on which it is predicated. *Cochran v. Columbia Gas of Ohio, Inc.*, 138 Ohio App.3d 888, 895 (10th Dist.2000).

{¶ 35} In my view, the university president's good-faith belief that Fendley committed visa fraud and/or will be indicted for visa fraud constitutes just cause for termination of Fendley's university employment, without notice, as provided in applicable laws, rules, and regulations. The question for this court in addressing Fendley's manifest-weight challenge is to determine whether the evidence supports the trial court's finding that Hopkins held a good-faith belief that Fendley committed visa fraud.

{¶ 36} At trial, Hopkins testified, over the objection of Fendley's trial counsel, as follows:

> Q. Dr. Hopkins, in August of 2015, was there an event that led you to believe that termination of Mr. Fendley was appropriate?
>
> A. *Yes. I met with our special counsel with the two investigating U.S. attorneys at their office in downtown Dayton and I spent an hour with them. I requested it because I wanted to see firsthand what was going on. We were getting hearsay, as we've said here today, from our counsel to our board. But I thought it was important for me to talk directly*

*to the U.S. attorneys about where the investigation was. So that was the event that precipitated my decision.*
Q. And when you left that meeting, had you formed any belief as to Mr. Fendley's conduct?

A. Yes. I believed –

MR. COPETAS: Objection. Again, I object to the relevancy of any of this testimony because Dr. Hopkins' belief is not what's important here. It's whether or not Ryan Fendley did something. That's what we're here for, are there facts that establish that.

THE COURT: Ms. Rabe?

MS. RABE: I would argue that we don't need to try the criminal case against Mr. Fendley; that the decision maker, Dr. Hopkins, I believe, will testify that he thought he had just cause, and that's sufficient.

MR. COPETAS: True. We don't have to try a criminal case. We have different standards of proof here. But the issue is still the same. Did Ryan Fendley violate a law, a rule or a regulation. That's the issue. Did he do that. Not whether or not Dr. Hopkins may have believed it. And if they want to establish that he did, they can try to establish that he did. But not based on what someone believes. That's not relevant.

THE COURT: Okay. Dr. Hopkins, I'm allowing you to testify about your impression after the meeting, but I don't want the details of what was said to you.

THE WITNESS: *Okay.*
*So my impression was that three individuals employed by Wright State had conspired to commit visa fraud and that my decision at that point, I thought it was in the best interest of the university to remove all three from the – from their administrative positions.*

BY MS. RABE:

Q. *Did you reach any conclusion at that time as to whether those three individuals had violated any federal law?*

A. *Based on conversation with U.S. attorneys, yes.*

MR. COPETAS: Objection.

THE COURT: Overruled.

MR. COPETAS: You can't talk about conversations with –

THE COURT: Overruled.

Q. At that point, did you feel you had any choice but to terminate Mr. Fendley's employment?

A. Personally I consulted with the chair of the board. I consulted with our director of HR. And through the conversations with them, I came to the conclusion I needed to remove all three from their administrative positions, including Mr. Fendley.

Q. And did you do that?

A. I did.

(Emphasis added.) (May 22, 2017 Tr. at 80-83.)

{¶ 37} The trial court found Wright State "had a legitimate concern regarding [Fendley's] involvement in visa fraud and/or eventual prosecution for visa fraud and acted on this concern when it terminated [Fendley's] employment." (Jan. 19, 2018 Decision at 6.) Hopkins' testimony, if believed, supports the trial court's finding that Hopkins discharged Fendley because he had formed a belief, based on the information he received during his meeting with the investigating United States attorneys and Wright State's special counsel, Fendley had committed and/or conspired with other Wright State employees to commit visa fraud. Hopkins also testified that he followed up his meeting with investigators by consulting with Wright State's director of human resources and chairman of the board before making his decision to discharge Fendley, without notice.

{¶ 38} For the above stated reasons, I do not believe the trial court's finding that Wright State discharged Fendley for documented just cause, as provided in applicable laws, rules, and regulations, is against the manifest weight of the evidence, and I would overrule Fendley's first and second assignments of error.

{¶ 39} In Fendley's third and fourth assignments of error, Fendley argues the trial court abused its discretion when it permitted Hopkins to testify about his belief in Fendley's guilt because Hopkins formed his belief based on hearsay statements made to him by investigators. I disagree.

{¶ 40} Pursuant to Evid.R. 801(C), hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  As can be seen from the transcript of Hopkins' trial testimony, Wright State offered evidence of Hopkins' belief in Fendley's guilt of visa fraud not for the purpose of proving that Fendley committed visa fraud or to prove the truth of the information Hopkins received from investigators but for the purpose of showing that Hopkins had formed a belief in Fendley's guilt and the substantial basis on which he formed that belief.  In determining whether the evidence in this case supported Fendley's discharge, without notice, the issue for the trial court was whether Hopkins determined Fendley had committed visa fraud in good faith and on the basis of substantial evidence.  Fendley's hearsay argument is predicated on the mistaken premise that neither Hopkins' belief in Fendley's guilt nor the basis on which Hopkins formed his belief are relevant evidence in this case.

{¶ 41} When viewed in the proper context, Fendley's testimony was neither irrelevant nor hearsay.  Moreover, the Supreme Court of the United States has recognized that an employer need not determine there is just cause for terminating an employee on the basis of actual, admissible evidence.  *See Waters v. Churchill*, 511 U.S. 661, 676 (1994).  In *Waters*, the Court explained it is inappropriate to force an "employer to come to its factual conclusions through procedures that substantially mirror the evidentiary rules used in court. * * * [E]mployers * * * often do rely on hearsay, on past similar conduct, on their personal knowledge of people's credibility, and on other factors that the judicial process ignores."  *Id.*  Thus, the fact that Hopkins relied on information reported to him by investigators does not render Hopkins' testimony inadmissible in this case.

{¶ 42} Based on the foregoing, I would hold the trial court did not abuse its discretion when it overruled Fendley's objections to Hopkins' testimony.  Accordingly, I would overrule Fendley's third and fourth assignments of error.

{¶ 43} For the foregoing reasons, I would overrule Fendley's assignments of error and affirm the judgment of the Court of Claims of Ohio.  Because the majority does otherwise, I respectfully concur in part and dissent in part.

_____